## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) TIFFANY ANN GLOVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** CIV-14-936-M |
| | ) | |
| **(1) JAYSON VEST, Individually,** | ) | |
| **and in his official capacity as Assistant** | ) | |
| **Chief of Police of City of Hollis, Oklahoma;** | ) | |
| **(2) DAVID LEATHERS,** | ) | |
| **Individually, and in his official capacity** | ) | |
| **as Chief of Police of the City of Hollis,** | ) | |
| **Oklahoma;** | ) | |
| **(3) CITY OF HOLLIS, OKLAHOMA; a** | ) | |
| **political subdivision;** | ) | |
| **(4) JOE JOHNSON,  in his official capacity** | ) | |
| **as Sheriff of Harmon County, Oklahoma;** | ) | |
| **(5) HARMON COUNTY, OKLAHOMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Tiffany Ann Glover, by and through her attorneys of

record, John S. Gladd and James N. Edmonds, of the law firm of Atkinson, Haskins, Nellis,

Brittingham, Gladd & Fiasco, of Tulsa, Oklahoma, and Darrell E. Latham and Phillip L.

Nelson, of the law firm of Latham, Nelson & Associates, PLLC, of Altus, Oklahoma, and

for her Complaint against the Defendants states and avers as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and

Fourteenth Amendments to the United States Constitution, as well as the laws of the State

of Oklahoma.  This Court has federal question jurisdiction of this action pursuant to 28 U.S.C. § 1331.

    2.    In addition to federal question jurisdiction, this action is between citizens of different States at the time this Complaint is filed and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.  Jurisdiction is proper pursuant to 28 U.S.C. §1331.

    3.    The acts and/or omissions giving rise to the Plaintiff's claims arose in Harmon County, State of Oklahoma, which is within the confines of the United District Court for the Western District of Oklahoma.  Venue is appropriate pursuant to 28 U.S.C. § 1391.

    4.    Plaintiff also asserts causes of action arising under Oklahoma law, namely claims for negligence and assault and battery.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

    5.    With respect to Plaintiff's supplemental state law claims, Plaintiff has complied with the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 156 (2011), and her claims have been deemed denied.

## PARTIES

    6.    Plaintiff, Tiffany Ann Glover, is a citizen of the State of Missouri.  At the time of the events related herein, Plaintiff Tiffany Glover was a resident of Hollis, Oklahoma. From approximately December 11, 2012, to January 16, 2013, Plaintiff Tiffany Ann Glover was confined in the custody of the Harmon County Jail, located in the City of Hollis,

Oklahoma.  Tiffany Glover is the mother of two young children.

7.      Defendant, Jayson Vest, is currently incarcerated at the Ellsworth Correctional Facility in Ellsworth, Kansas.  At the times relevant herein, Jayson Vest was the Assistant Chief of Police of the City of Hollis, Oklahoma.  Jayson Vest is sued in both his individual capacity and in his official capacity for acts performed while he was the Assistant Chief of Police of the City of Hollis.   Vest is sued for both federal and state law claims.  At all times relevant herein,  Jayson Vest was acting under the color of law and within the course and scope of his employment with the City of Hollis, Oklahoma.

8.      Defendant David Leathers is a resident of the State of Oklahoma.  At the times relevant herein, David Leathers was employed by the City of Hollis as Chief of Police.  After the events related herein occurred, David Leathers resigned his position as Chief of Police, but upon information and belief, continues to maintain employment with the City of Hollis.  Defendant Leathers is sued in his official capacity for acts performed while Defendant Leathers was the Chief of Police of the City of Hollis.  Leathers is sued for both federal and state law claims.  During the time David Leathers was the Chief of Police he was a policy maker for the City of Hollis.  At all time relevant herein, David Leathers was acting under color of state law and within the course and scope of his employment with the City of Hollis, Oklahoma.

9.      The City of Hollis is an Oklahoma municipal corporation and a political

3

subdivision of the State of Oklahoma.  The City of Hollis is located in Harmon County, Oklahoma.  The City of Hollis is sued for both federal and state law claims.

10.     Defendant Joe Johnson is a resident of the State of Oklahoma.  At the times relevant herein, Joe Johnson was and continues to be the duly elected Sheriff of Harmon County, State of Oklahoma.  Sheriff Joe Johnson is sued in his official capacity as Sheriff of Harmon County, Oklahoma.  Sheriff Johnson is sued for both federal and state law claims. Sheriff Joe Johnson is the final policy maker for the Harmon County Sheriff's office.  There is no other person who has authority over the Sheriff of Harmon County, acting in his capacity as sheriff.  Both as to his own conduct and the conduct of his employees, because of his position as Sheriff of Harmon County, the acts, customs, policies, practices, failure to train and failure to supervise his employees alleged herein are attributable to the County as well as to the Sheriff in his official capacity.  At all times relevant herein, Sheriff Johnson was acting under color of state law and in the course and scope of his employment as the Sheriff of Harmon County, Oklahoma.

11.     Harmon County is a political subdivision of the State of Oklahoma located in southwest Oklahoma.  Defendant Harmon County is sued solely for supplemental state law claims.

12.     All of the conduct of the Defendants alleged herein was within the exercise of state authority within the meaning of 42 U.S.C. § 1983.

## CAUSAL BACKGROUND

4

13.     Upon information and belief, Jayson Vest was hired by the City of Hollis, on or about August 24, 2012.  Vest was hired by Chief of Police David Leathers as a police officer for the City of Hollis.  At some point relatively soon thereafter, Vest was promoted to the supervisory position of Assistant Chief of Police.

14.     Prior to the events in question herein, and as a direct cause thereof, the City of Hollis and Chief  Leathers knew or should have known of a pattern and practice of behavior by Defendant Vest and law enforcement officers to harass and intimidate women and abuse their authority acting under color of state law.

15.     Prior to the events in question herein, and as a direct cause thereof, the City of Hollis and Chief  Leathers had been provided with information regarding the propensity of Defendant Vest to use his position and authority as a law enforcement officer to sexually harass and intimidate women.

16.     Prior to the events in question herein, and as a direct cause thereof, the City of Hollis and Chief  Leathers were aware that the conduct of Defendant Vest posed a threat to the public as a result of Defendant Vest's use of his authority acting under color of state law to harass and intimidate women in the City of Hollis.

17.     Although the City of Hollis and Chief Leathers were aware of a pattern of police misconduct, intimidation and harassment directed toward women, the City and Chief Leathers responded inappropriately to the allegations of police misconduct involving Defendant Vest.

18.     In spite of the fact that the City and Chief Leathers had knowledge of the propensity of Assistant Chief Vest to use his authority and position to intimidate and sexually harass women, the City and Chief Leathers took no actions to curtail this behavior.

19.     The pattern of acquiescence on the part of the City of Hollis and Chief of Police Leathers in the face of constitutional violations and police misconduct by Assistant Chief Vest was so persistent and widespread as to constitute a policy and common procedure and to have the effect and force of law.

20.     By and through Chief Leathers, the City of Hollis deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and the threat of constitutional violations.

21.     Prior to the events in question herein, and as a direct cause thereof, Chief Leathers and the City of Hollis failed to establish and enforce procedures for the safety of women in the City of Hollis and for the safety of female detainees taken into custody by City of Hollis law enforcement personnel, including, but not limited to, the following:

    (1)    procedures, policies and supervision controlling the circumstances in which City of Hollis law enforcement personnel were allowed to have contact with and access to female detainees in the Harmon County Jail, including policies governing the circumstances in which law enforcement personnel were allowed to remove female detainees from their cells;

    (2)    procedures, policies and supervision prohibiting City of Hollis law enforcement personnel from removing female detainees from their cells and taking them to areas where surveillance cameras were not present and/or areas where the interactions between law enforcement personnel and female persons in custody could not be monitored;

(3)     procedures, policies and supervision controlling the circumstances in which City of Hollis law enforcement personnel were allowed to remove detainees for interrogation without the presence of counsel known to be representing the persons in custody;

(4)     procedures, policies and supervision to ensure the safety of female detainees from sexual harassment, sexual abuse and sexual battery by City of Hollis law enforcement personnel;

(5)     procedures, policies and supervision to ensure that reports of sexual harassment and potential threats to the safety of female persons, including female detainees, were fully and properly investigated to ensure the safety of female persons from sexual harassment, sexual abuse and sexual battery by law enforcement personnel and employees of the City of Hollis;

(6)     procedures, policies and supervision prohibiting City of Hollis law enforcement personnel from using their power and position acting under color of state law from preying on victims of domestic abuse, known to be in a particularly vulnerable position; and,

(7)     procedures, policies and supervision prohibiting City of Hollis law enforcement personnel from using their power and position acting under color of state law from preying on and/or sexually harassing and abusing female detainees known to be in a particularly vulnerable position.

22.     Sheriff Joe Johnson is the final policy maker for all material conduct of the Sheriff of Harmon County and is vested with general control over the Harmon County Jail. Sheriff Johnson is responsible for establishing procedures, policies, supervision and training for the orderly, lawful, and safe operation of the Harmon County Jail.   The duty of Sheriff Johnson includes the safety of female detainees and the prevention of sexual abuse by law enforcement personnel.

7

23.     Prior to the events in question herein, and as a direct cause thereof, Sheriff Johnson failed to establish and enforce procedures for the safety of female persons detained in the Harmon County Jail, including, but not limited to, the following:

(1)     procedures, policies, supervision, and training concerning the appropriate circumstances in which law enforcement personnel were authorized to remove female detainees from their cells;

(2)     procedures, policies and supervision prohibiting law enforcement personnel from removing female detainees from their cells and taking them to areas where surveillance cameras were not present and/or areas in which the interactions between law enforcement personnel and female detainees cannot be monitored;

(3)     procedures, policies and supervision controlling the circumstances in which law enforcement personnel were allowed to remove detainees for interrogation without the presence of counsel known to be representing the persons in custody;

(4)     procedures, policies and supervision to ensure the safety of female detainees and to protect them from sexual harassment, sexual abuse and sexual battery;

(5)     procedures, policies and supervision to ensure the reporting of sexual harassment and potential threats to the safety of female detainees from sexual harassment, sexual abuse and sexual battery, particularly including such action taken by law enforcement personnel, employees of the City of Hollis, and employees of the County of Harmon having access to female persons at the Harmon County Jail;

(6)     procedures, policies and supervision to control and limit access to female detainees in the Harmon County Jail after notice of potential abuse or sexual harassment of female detainees had been provided to the Sheriff of Harmon County and/or Harmon County officials; and

(7)     procedures, policies and supervision prohibiting nepotism and conflicts of interest between Harmon County jailers and staff and law

enforcement personnel seeking access to female detainees in the Harmon County Jail.

24.     Prior to the events in question herein, and as a direct cause thereof, Harmon County Sheriff Johnson was on notice that Defendant Vest posed a threat to Tiffany Glover and that Vest had used his authority and position to intimidate and sexually harass Tiffany Glover.

25.     Prior to the events in question herein, and as a direct cause thereof, Sheriff Johnson was aware of a pattern of police misconduct and responded inappropriately and with deliberate indifference to the allegations of police misconduct involving Defendant Vest.

26.     The pattern of acquiescence and deliberate indifference on the part of Sheriff Johnson in the face of constitutional violations was so persistent and widespread as to constitute a policy and common procedure and to have the effect and force of law.

27.     Sheriff  Johnson deliberately failed to take remedial action in the face of constitutional violations and the threat of constitutional violations.

**THE OCCURRENCE**

28.     On or about October 24, 2012, Defendant Vest responded to a domestic disturbance in which non-party, William Shield, was arrested and Tiffany Glover was the victim.

29.     Despite Tiffany Glover's vulnerable situation as a victim of domestic abuse, Defendant Vest began frequenting Tiffany Glover's grandmother's house where Tiffany Glover was staying.

9

30.     Defendant Vest, who was married at the time, began to engage in odd and unsettling behavior by dropping by the residence of Tiffany Glover's grandmother, ostensibly to ask Tiffany Glover how she was doing and to chat with Tiffany Glover's grandmother.

31.     In the weeks that followed, Defendant Vest began pressuring Tiffany Glover in a sexually suggestive and harassing manner.

32.     In one instance, Defendant Vest approached Tiffany Glover as she was picking up her young son at school and asked Tiffany "when are you going to go out with me?" The encounter made Tiffany Glover so uncomfortable she walked away without responding.

33.     A short time later, Defendant Vest approached Tiffany Glover at her home, and asked her whether she would testify against William Shield in a protective order hearing. Defendant Vest also continued his requests that Tiffany Glover go out with him. Tiffany Glover refused and declined Vest's requests for a date.

34.     The conduct of Defendant Vest frightened Tiffany Glover. Tiffany Glover was afraid Vest's requests for a date were a veiled demand for sex.

35.     On December 11, 2012, Tiffany Glover parked at her grandmother's home, only to find that Defendant Vest had pulled up behind her. Without a warrant and with no probable cause, Vest approached Tiffany Glover's vehicle and again asked "when are we gonna go on a date?" She told Defendant Vest that she would not go on a date with him.

36.     In retaliation for her refusal, and in the absence of probable cause, Defendant Vest ordered Tiffany Glover to produce her driver's license and insurance information.

Defendant Vest then proceeded, without a warrant and with no probable cause, to search Tiffany Glover's vehicle.  Defendant Vest then arrested Tiffany Glover for control over a motor vehicle while under the influence and possession of illegal substances.

37.    Tiffany Glover was taken into custody and transported to the Harmon County Jail.  Defendant Vest continued to intimidate, sexually harass and verbally abuse her.

38.    Defendant Vest, acting under color of state law, was allowed access to Tiffany Glover in the jail wherein Vest made sexually explicit remarks, threats, and advances, while alternatively humiliating Tiffany Glover by referring to her as a "crack head" and "crack whore."

39.    Defendant Vest suggested that other female detainees wanted to have sex with him and that if Tiffany Glover reported his conduct, no one would believe her.

40.    Defendant Vest would alternatively attempt to befriend Tiffany Glover by suggesting she and her children could go tubing with him on his boat and suggesting that Ms. Glover could pose for Vest in a swimsuit in a sexually suggestive manner.

41.    Because she was fearful of what Defendant Vest might do to her, Tiffany Glover sought the protection of Sheriff Johnson from the threatening and degrading behavior of Defendant Vest.

42.    Tiffany Glover reported Defendant Vest's behavior to Sheriff Johnson, but was falsely and incorrectly told by Sheriff Johnson that there was nothing he could do to stop the harassment and illegal deprivation of Tiffany Glover's constitutional rights.

11

43.     Sheriff Johnson took no steps to prohibit or restrict Defendant Vest from having access to Tiffany Glover in the Harmon County Jail.  Sheriff Johnson failed to take any measures for Tiffany Glover's protection.  Sheriff Johnson informed Tiffany Glover she would need to file a complaint with the Drug Task Force regarding Defendant Vest's improper and illegal behavior.

44.     Pursuant to Sheriff Johnson's suggestions, Tiffany Glover lodged a complaint with the Drug Task Force.  A meeting was held with the Drug Task Force at the Harmon County District Attorney's office on January 3, 2013.

45.     Tiffany Glover informed both Sheriff Johnson and the Drug Task Force of the conduct and behavior of Defendant Vest and expressed her fears and concerns.  Tiffany Glover provided a detailed account of the sexual harassment and abuse she had suffered in the Harmon County Jail as a result of Defendant Vest's actions.

46.     Following the meeting, Sheriff Johnson transported Tiffany Glover back to the Harmon County Jail.  No action was taken by Sheriff Johnson to protect Tiffany Glover from contact with Defendant Vest or to limit, control or monitor Defendant Vest's access to Tiffany Glover.

47.     On January 16, 2014, Tiffany Glover was again approached by Defendant Vest despite the fact Sheriff Johnson, Police Chief Leathers and the City of Hollis were all on notice that Jayson Vest was using his power and position as Assistant Chief of Police of the

City of Hollis to engage in inappropriate behavior rising to the level of a violation of Tiffany Glover's constitutional rights.

48.     Defendant Vest told Tiffany Glover that he wanted to speak with her alone later.

49.     Tiffany Glover was so frightened and concerned by Vest's statement that she called her mother, Shura Garrett, and requested that her mother contact Sheriff Johnson and inform him of Vest's actions.

50.     Tiffany Glover's mother did contact Sheriff Johnson and requested that Sheriff Johnson go to the Harmon County Jail and take steps to prevent Defendant Vest from being alone with Tiffany Glover.

51.     Despite Sheriff Johnson's prior knowledge of Tiffany Glover's complaints regarding Vest's actions in sexually harassing, verbally abusing and intimidating Tiffany Glover, Sheriff Johnson failed to take any action to protect Tiffany Glover.

52.     Tiffany Glover was represented in the criminal action by attorney Stephanie Powers.  The Defendants were aware Tiffany Glover was represented by counsel.

53.     Despite the fact Defendants knew Tiffany Glover was represented by counsel, and despite Tiffany Glover's repeated complaints and requests for protection, Defendant Vest was allowed to remove Tiffany Glover from her cell at the Harmon County Jail.  Vest claimed that he needed to interrogate her.

13

54.     Defendant Vest took Tiffany Glover out of the jail area and away from surveillance cameras and into the office of Police Chief Leathers where no one else was present.  Vest shut and locked the door to Chief Leathers' office.

55.     At the time Defendant Vest removed Tiffany Glover from her cell on January 16, 2013, April Vest, the wife of Defendant Vest, was the jailer on duty for Harmon County. Despite Tiffany Glover's complaints and the notice and warnings given the Defendants, no steps were taken to monitor and/or restrict Vest's access to Tiffany Glover.

56.     While in the Chief of Police's office, Defendant Vest ordered Tiffany Glover to sign a *Miranda* waiver form.  Fearful of what Vest might do if she refused, and believing that she had no choice, Tiffany Glover complied with Vest's instructions.  Vest then began to question Tiffany Glover.

57.     As Defendant Vest questioned Tiffany Glover, he began to move closer to her, ultimately separating her legs with his knees, so that he could fondle Tiffany Glover.

58.     Defendant Vest forced Tiffany Glover to fondle him.

59.     Defendant Vest exposed himself to Tiffany Glover and forced Tiffany Glover to perform oral sex.  Vest then removed Tiffany Glover's pants and raped her.  Vest then forced Tiffany Glover to perform oral sex for a second time.

60.     When Vest was finished with her, he ordered Tiffany Glover to get dressed. Defendant Vest then called his wife, April Vest, into the room and Tiffany Glover was returned to her cell.

14

61. Tiffany Glover showered and called her mother, Shura Garrett, in a phone call recorded by the Harmon County Jail. During that phone conversation Tiffany Glover told her mother what Vest had done to her.

62. In spite of the complaints that Tiffany Glover had made concerning Vest and his behavior toward her, no one at the Harmon County Jail informed either Chief Leathers or Sheriff Johnson that Vest had taken her out of her cell and into a locked office. During the entire time Defendant Vest had Tiffany Glover alone in the Chief's office, no one at the Harmon County Jail alerted either the Chief or the Sheriff of what was happening. Sheriff Joe Johnson took no action to alert staff at the Harmon County Jail or otherwise protect Tiffany Glover from Assistant Chief of Police Jayson Vest.

## FIRST CAUSE OF ACTION –VIOLATION OF CONSTITUTIONAL RIGHTS FOURTH AND FOURTEENTH AMENDMENTS

63. The allegations set fourth in Paragraphs 1 through 62 above are incorporated herein as if fully set forth.

64. Defendant Vest, acting under color of state law, deprived Tiffany Glover of her clearly established constitutional right under the Fourth Amendment of the Constitution to be secure in her person and to be free from unreasonable search and seizures by arresting her without a warrant and without probable cause.

65. Assistant Chief of Police Jayson Vest, acting under color of state law, deprived Tiffany Glover of her clearly established constitutional right under the Fourth Amendment

15

by using his power and authority as the Assistant Chief of Police of the City of Hollis to subject her to sexual harassment and mental abuse.

66.    Assistant Chief of Police Jayson Vest, acting under color of state law, deprived Tiffany Glover of her clearly established constitutional right under the Fourth Amendment of the Constitution of the United States to be secure in her person and to be free from unreasonable search and seizures by using his power and authority as the Assistant Chief of Police of the City of Hollis to rape her and force her to perform oral sex while she was detained in the Harmon County Jail.

67.    The sexual assault and rape of Tiffany Glover while she was in the custody of the Harmon County Jail, was unreasonable and reprehensible.  The sexual assault and rape was in violation of Oklahoma and federal law.

68.    Chief of Police David Leathers and the City of Hollis were on notice of Defendant Vest's propensity to harass and intimidate women in the City of Hollis.  Despite actual and constructive knowledge of Jayson Vest's propensity, Chief of Police David Leathers and the City of Hollis took no steps to prevent Vest's behavior.  In failing to take any action to protect Tiffany Glover and other women in the Hollis community, they acted with deliberate indifference to the safety and constitutional rights of Tiffany Glover and others.

69.    The deliberate indifference of Chief of Police David Leathers and the City of Hollis to the complaints and information provided to them regarding the actions and conduct

16

of Assistant Chief of Police Jayson Vest, and their failure to investigate said complaints and take remedial action, such as training and counseling Jayson Vest, restricting and/or prohibiting Jayson Vest's access to female detainees, and/or removing Jayson Vest from his position as Assistant Chief of Police, was a moving force and a direct cause of the deprivation of Tiffany Glover's Constitutional rights.

70.     The failure of Chief of Police David Leathers and the City of Hollis to establish and  enforce policies and procedures controlling the circumstances in which a male law enforcement officer was allowed to remove a female detainee from her cell and take her to a location in which the law enforcement officer's interaction with a female detainee could not be monitored and observed was a moving force and a direct cause of the deprivation of Tiffany Glover's Fourth Amendment rights.

71.     Chief of Police David Leathers and the City of Hollis failed to adequately or reasonably act on prior complaints of misconduct on the part of Assistant Chief of Police Jayson Vest and exhibited deliberate indifference and/or tacit authorization of Jayson Vest's actions in sexually harassing women in the City of Hollis.  The acquiescence and deliberate indifference to the known conduct of Assistant Police Chief Jayson Vest was a direct cause of the deprivation of Tiffany Glover's Fourth Amendment rights.

72.     Sheriff Joe Johnson had actual and constructive notice that Assistant Police Chief Jayson Vest posed a substantial risk to Tiffany Glover, if allowed to have unrestricted access to Tiffany Glover while she was incarcerated in the Harmon County Jail.  Sheriff Joe

Johnson acted with deliberate indifference to Tiffany Glover's clearly established constitutional right under the Fourth Amendment of the Constitution of the United States to be secure in her person and to be free from unreasonable search and seizures by law enforcement personnel.  The actions and inaction of Sheriff Joe Johnson was a moving force and a direct cause of the deprivation of Tiffany Glover's Fourth Amendment rights.

73.     Sheriff Joe Johnson had actual and constructive notice that Assistant Chief of Police Jayson Vest had engaged in a pattern of sexual harassment and mental abuse upon Tiffany Glover.  Sheriff Joe Johnson acted with deliberate indifference to the safety of Tiffany Glover and her clearly established constitutional rights under the Fourth Amendment of the Constitution of the United States to be secure in her person and to be free from unreasonable search and seizures by law enforcement personnel.  Sheriff Joe Johnson's acquiescence, deliberate indifference and failure to act reasonably in the face of complaints demonstrating Assistant Chief of Police Jayson Vest posed a significant threat to Tiffany Glover, such that it was highly predictable, highly likely and plainly obvious their inaction would result in the continued deprivation of Tiffany Glover's rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution by Assistant Chief of Police Jayson Vest.  The deliberate indifference of Sheriff Joe Johnson was a moving force and a direct cause of the deprivation of Tiffany Glover's Fourth Amendment rights.

74.     Sheriff Joe Johnson's failure to establish adequate procedures, policies and supervision for the safety and protection of female detainees in general, and Tiffany Glover,

in particular, demonstrates a deliberate indifference to the violation of Tiffany Glover's rights under both the Fourth Amendment and Fourteenth Amendment of the United State Constitutions.  Sheriff Joe Johnson failed to establish adequate procedures, policies, training, and supervision concerning the transfer of female detainees by unsupervised male officers. This established policy of allowing male officers and law enforcement personnel to take custody of female detainees and remove them from areas where surveillance and supervision by Harmon County staff was available, was a direct cause of the violation of Tiffany Glover's constitutional rights.

75.     Assistant Chief of Police Jayson Vest, acting under color of state law, deprived Plaintiff Tiffany Glover of her clearly established right against cruel and unusual punishment as applied to pretrial detainees under the Fourteenth Amendment of the Constitution of the United States by using his power and authority as the Assistant Chief of Police of the City of Hollis to rape her and sexually assault her while she was in the custody.

76.     Sheriff Joe Johnson acted with deliberate indifference to Plaintiff Tiffany Glover's due process right to bodily integrity and to be free from unwelcome sexual fondling and touching and other egregious sexual contact by a police officer acting under color of law, by failing to adopt policies to monitor and supervise the actions of law enforcement personnel in removing female detainees from their cells and taking them to areas where monitoring and supervision was not possible and in failing to adequately respond to actual and constructive notice that Assistant Chief of Police Jayson Vest posed a serious threat to

the health and safety of Tiffany Glover and her right to be free from cruel and unusual punishment by law enforcement personnel acting under the color of state law.

77.     As a direct and proximate result of the actions of the Defendants, Tiffany Glover suffered a sexual assault, battery and rape and has suffered bodily injury, severe emotional distress, psychological damage, personal humiliation, degradation, mental anguish, pain and suffering and medical and psychological costs and expenses.

78.     The actions of the Defendants were deliberate, willful, wanton and malicious, and taken in reckless and intentional disregard of the rights of Tiffany Glover, thereby entitling Tiffany Glover to an award of punitive damages in an amount sufficient to deter the Defendants, and others similarly situated, from engaging in similar conduct in the future.

**SECOND CAUSE OF ACTION –
SUPPLEMENTAL STATE LAW CLAIMS – NEGLIGENCE**

79.     The allegations set fourth in Paragraphs 1 through 78 above are incorporated herein as if fully set forth.

80.     Defendants, Chief of Police David Leathers, and the City of Hollis were negligent in failing to properly investigate Jayson Vest's background, in hiring Jayson Vest and then promoting Jayson Vest to the supervisory position of Assistant Chief of Police.

81.     Defendants, Chief of Police David Leathers and the City of Hollis, were negligent in failing to properly train and supervise Jayson Vest with respect to sexual harassment, treatment of women, and the constitutional rights of female detainees.

82.     Defendants, Chief of Police David Leathers and the City of Hollis, were negligent in failing to investigate and adequately respond to actual and constructive notice of Jayson Vest's propensity to sexually harass women and to use his power and position as a law enforcement officer to intimidate and sexually harass women.

83.     Defendants, Sheriff Joe Johnson and Harmon County, were negligent in failing to establish and enforce internal rules, policies and procedures and state law governing the operation of jails within the State of Oklahoma.  Sheriff Joe Johnson and Harmon County had a duty under state law to the public and to Tiffany Glover to enforce and uphold practices and procedures which would prevent removal of female detainees by law enforcement personnel to areas in which sexual assault and battery could occur undetected.

84.     Defendants, Sheriff Joe Johnson and Harmon County, were negligent in failing to properly train and supervise jailers and other staff working at the Harmon County jail so as to prevent unlawful sexual assaults upon female detainees.

85.     Defendants, Sheriff Johnson and Harmon County, were negligent in failing to properly investigate Tiffany Glover's prior complaints regarding Defendant Vest's sexual harassment, and in failing to take remedial steps to prevent Jayson Vest from having access to Tiffany Glover and from verbally and sexually abusing Tiffany Glover.

86.     As a direct and proximate result of the negligence of the Defendants, Tiffany Glover suffered a sexual assault, battery and rape and has suffered bodily injury, severe

emotional distress, psychological damage, personal humiliation, degradation, mental anguish, pain and suffering and medical and psychological costs and expenses.

### THIRD CAUSE OF ACTION
### SUPPLEMENTAL STATE LAW CLAIMS – ASSAULT AND BATTERY

87.    Defendant Vest, acting under color of state law, and during the course of a police interrogation and investigation, engaged in a harmful and offensive physical contact of a sexual nature with Plaintiff Tiffany Glover thereby inflicting pain, injury and humiliation.

88.    Assistant Police Chief Jayson Vest was acting in the course and scope of his employment with the City of Hollis at the time of the harmful and offensive physical contact.

89.    As a direct and proximate result of the acts of Assistant Chief of Police Jayson Vest and the City of Hollis, Tiffany Glover has suffered bodily injury, severe emotional distress, psychological damage, personal humiliation, degradation, mental anguish, pain and suffering and medical and psychological costs and expenses.

90.    The actions of Defendant Vest were deliberate, willful, wanton and malicious, and taken in reckless and intentional disregard of the rights of Tiffany Glover, thereby entitling Tiffany Glover to an award of punitive damages in an amount sufficient to deter the Defendants, and others similarly situated from engaging in similar conduct in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Tiffany Ann Glover, prays for judgment against the Defendants, jointly and severally, for both compensatory and punitive damages, in a sum in

excess of one hundred thousand dollars against each Defendant, exclusive of interest, costs and attorneys fees, together with the lawful costs, interest and attorney's fees as provided by law, as well as all other and further relief this Court deems just and equitable under the premises.

Respectfully submitted,

**ATKINSON, HASKINS, NELLIS, BRITTINGHAM, GLADD & FIASCO**
A PROFESSIONAL CORPORATION

_/s/ John S.  Gladd_____
John S. Gladd, OBA #12307
James N. Edmonds, OBA #15757
525 South Main, Suite 1500
Tulsa, OK  74103-4524
Telephone: (918) 582-8877
Facsimile: (918) 585-8096

and

Darrell E. Latham, OBA #11398
Phillip L. Nelson, OBA #11942
P.O. Box 953
1000 North Main
Altus, OK 73522
***Attorneys for Plaintiff, Tiffany Ann Glover***

S:\Files\334\457\complaint2-mjb.wpd